JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Courtney (Kai) Janik

**(b)** County of Residence of First Listed Plaintiff: Cumberland
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Mary Kramer; Murphy Law Group, LLC; Eight Penn Center, Suite 2000, 1628 John F. Kennedy Blvd., Philadelphia, PA 19103; 267-273-1054

## DEFENDANTS

Arc International North America

County of Residence of First Listed Defendant: Cumberland
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☒ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
Title VII of the Civil Rights Act of 1964 ("Title VII), 42 U.S.C. § 2000e, et seq.

Brief description of cause:
SEX/GENDER DISCRIMINATION, RETALIATION, AND HOSTILE WORK ENVIRONMENT

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ____________ DOCKET NUMBER ____________

DATE: Sep 22, 2026

SIGNATURE OF ATTORNEY OF RECORD: /s/ Mary Kramer

**FOR OFFICE USE ONLY**

RECEIPT # ________ AMOUNT ________ APPLYING IFP ________ JUDGE ________ MAG. JUDGE ________

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **COURTNEY (KAI) JANIK**<br>803 Magnolia Avenue<br>Millville, NJ 08332<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ARC INTERNATIONAL NORTH AMERICA**<br>601 S Wade Boulevard<br>Millville, NJ 08332;<br><br>**Defendants.** | : | CIVIL NO. ____________<br><br><br><br>***JURY TRIAL DEMANDED*** |

**COMPLAINT – CIVIL ACTION**

Plaintiff Courtney (Kai) Janik ("Plaintiff"), by and through his undersigned counsel, for his Complaint against Defendant Arc International North America ("Defendant"), alleges as follows:

**INTRODUCTION**

1. Plaintiff initiates this action contending Defendant violated Title VII of the Civil Rights Act of 1964 ("Title VII), 42 U.S.C. § 2000e, *et seq*., and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, *et seq.* Specifically, Plaintiff contends that Defendant subjected him to differential treatment and a hostile work environment on the basis of his sex, gender identity, and/or transgender status, and terminated him from employment in retaliation for his complaints in connection thereto, in violation of Title VII and the NJLAD.

## PARTIES

2. Plaintiff, Courtney (Kai) Janik, is a citizen of the United States and the State of New Jersey, who, at the time of his employment, maintained a residence at 803 Magnolia Avenue, Millville, NJ 08332.

3. Defendant Arc International North America ("Defendant") is a for-profit corporation organized and existing under the laws of the State of New Jersey with a registered office address and principal place of business located at 601 S Wade Boulevard, Millville, NJ 08332.

4. At all times relevant hereto, Defendant acted or failed to act through its agents, servants, and/or employees thereto existing, each of whom acted at all times relevant hereto in the course and scope of their employment with and for Defendant.

## JURISDICTION AND VENUE

5. Paragraphs 1 through 4 are hereby incorporated by reference as though the same were fully set forth at length herein.

6. On or about April 21, 2026, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), thereby satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e). Plaintiff's EEOC charge was docketed as EEOC Charge No. 530-2026-06019. Plaintiff's EEOC charge was filed within one-hundred and eighty (180) days of the unlawful employment practice.

7. By correspondence dated July 23, 2026, Plaintiff received a Notice of Right to Sue from the EEOC regarding his Charge, advising him that he had ninety (90) days to file suit against Defendant.

8. Plaintiff filed the instant action within the statutory time frame applicable to his claims.

9. Plaintiff has therefore exhausted his administrative remedies and has complied with all conditions precedent to maintain this action.

10. This is an action authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII), 42 U.S.C. § 2000e, *et seq*.

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

12. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims arise out of the same common nucleus of operative fact as his federal claims.

13. The venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as Defendant does business in this judicial district and the unlawful practices of which Plaintiff is complaining were committed herein.

## **FACTUAL BACKGROUND**

14. Paragraphs 1 through 13 are hereby incorporated by reference as though the same were fully set forth at length herein.

15. On or about June 4, 2024, Plaintiff began his employment with Defendant in the position of Electro Mechanic.

16. Shortly after his hire, Plaintiff began being subjected to severe and pervasive harassment and discrimination based on his sex, gender identity, and/or transgender status.

17. By way of example, during the early days of Plaintiff's hire, Defendant's employees, including but not limited to Estella Williams ("Ms. Williams") (cisgender woman),

who went by "Cookie," along with other employees, would constantly remark, "when they told us they hired a mechanic guy named Courtney, I was surprised because I never heard of a gentleman being called a girl."

18. Such comments were made to Plaintiff on multiple occasions during the early weeks of his employment, and ultimately became an ongoing and unwelcome joke.

19. Moreover, Defendant also subjected Plaintiff to differential treatment on the basis of his sex, gender identity, and/or transgender status.

20. By way of example, when Plaintiff requested that his preferred name "Kai" be embroidered onto his uniform, Defendant refused and explained that "[Plaintiff] was not allowed to have [his] nickname."

21. Despite Plaintiff explaining that "Kai" is not a nickname but a preferred name that aligns with his gender identity, Defendant failed to respect Plaintiff's gender identity, leaving him feeling embarrassed and humiliated.

22. Notably, Defendant allowed Ms. Williams to have "Cookie" embroidered onto her uniform, despite it being a nickname and not her real name.

23. Furthermore, Defendant singled Plaintiff out and gave Plaintiff a uniform with his last name embroidered onto it while Defendant's other employees had their first names and/or nicknames embroidered onto their uniforms.

24. By way of further example, Defendant's employees, including but not limited to Defendant's PC Technician, Russ Huffman ("Mr. Huffman") (cisgender man), who constantly bullied, yelled, and cursed Plaintiff out, would subject Plaintiff to discriminatory, and/or transphobic comments relating to his gender identity.

25. Mr. Huffman would state, among other things, remarks such as "[Plaintiff is] over there crying like a baby" and that he "[could] bring [Plaintiff] a tampon."

26. On one occasion, Mr. Huffman told Plaintiff that he called the cops on his transgender neighbor after a verbal altercation and yelled "what's in your pants, the police are coming, they will need to know who you are, whether you're a male or female."

27. Mr. Huffman laughed out loud as he yelled those words verbatim while recounting the altercation he had with his neighbor.

28. On another occasion, Mr. Huffman told Plaintiff that he took his nephew to the barbershop to get his long hair cut because "he was a boy" and needed to look like one.

29. Defendant's Mechanic, Quidon Lake ("Mr. Lake") (cisgender man), would also subject Plaintiff to harassment and intentionally interfere with Plaintiff's work tools, such as his toolbox and walkie talkie, by intentionally misplacing them.

30. Mr. Lake's targeted harassment went on for months, and when Plaintiff reported it to Defendant's Team Leader/Supervisor of Maintenance Department, Dennis Franklin ("Mr. Franklin") (cisgender man), and Defendant's Superintendent, Gary Fischer ("Mr. Fischer") (cisgender man), they dismissed his concerns and told Plaintiff to "just stay away from [Mr. Lake]."

31. Throughout his employment, Plaintiff reported the aforementioned discriminatory, and/or transphobic comments, and the hostile work environment to Defendant's Head of Human Resources, Erin Hennesy ("Ms. Hennesy") (cisgender woman), Human Resources Representative, Jessica Depalma ("Ms. Depalma") (cisgender woman), Mr. Franklin, and Mr. Fischer, but was consistently dismissed and/or ignored.

32. As such, Defendant failed to take any remedial and/or corrective action in response to Plaintiff's good-faith reports of being subjected to discriminatory mistreatment and a hostile environment.

33. On or about April 4, 2025, Mr. Lake wrote Plaintiff a note and intentionally misspelled Plaintiff's deadname as "Courney" instead of "Courtney," which results in the pronunciation of Plaintiff's name to sound like "corny."

34. Understandably, Plaintiff was deeply upset by Mr. Lake's continued discriminatory and harassing behavior.

35. Despite Plaintiff introducing himself to Defendant's employees as Kai, Mr. Lake would intentionally refer to Plaintiff by his deadname, Courtney.

36. Plaintiff reported this to Ms. Depalma, along with a picture of the aforementioned note, describing that the discriminatory behavior he had been subjected to caused him to feel discriminated against and harassed on the basis of his gender identity.

37. However, Ms. Depalma dismissed Plaintiff's good-faith report and told Plaintiff, "[Mr. Lake] is just doing his job."

38. As such, Ms. Depalma permitted the aforementioned behavior and failed to take any remedial and/or corrective action in response to Plaintiff's good-faith reports of being subjected to discriminatory mistreatment and a hostile work environment.

39. On multiple occasions between in or around June and September of 2025, Plaintiff informed Defendant's Head of Human Resources, Ms. Hennesy, that he is on the waitlist to obtain a medical appointment to receive testosterone shots.

40. Plaintiff further informed Ms. Hennesy that he used to receive testosterone shots weekly, but had not received them in the last couple of months due to his health insurance.

41. In or around late September of 2025, Plaintiff informed Ms. Hennesy that he was not feeling well and was able to schedule an appointment in December of 2025, to receive the aforementioned testosterone shots.

42. During this conversation, Plaintiff also expressed to Ms. Hennesy that he would need time off and that he wanted to request reasonable accommodations.

43. Between in or around August and September of 2025, Defendant's Mechanics, Christian Ford ("Mr. Ford") and Ray Danzel ("Mr. Danzel"), started creating a hostile work environment by telling everyone that Plaintiff's real name is Courtney while proceeding to laugh at Plaintiff.

44. Defendant's employees would constantly make fun of Plaintiff and comment on Plaintiff's gender identity, creating a severe and pervasive hostile work environment, which any reasonable person would find abusive and/or offensive.

45. On or about October 12, 2025, Plaintiff submitted another report to Mr. Franklin and Mr. Fischer regarding the ongoing harassment he was being subject to by Defendant's employees, their discriminatory remarks, and their interference with his work tools.

46. Unsurprisingly, Defendant once again failed to take any remedial and/or corrective action in response to Plaintiff's complaint(s).

47. On or about November 24, 2025, Ms. Hennesy abruptly suspended Plaintiff without pay citing that "[Plaintiff] failed to clock out for lunch" and "left the premises during [his] lunch break."

48. During the entirety of Plaintiff's employment with Defendant, Plaintiff was never told to clock out for lunch or that he could not leave the premises during his break.

49. In fact, all of Defendant's employees took their lunch breaks without clocking out and would consistently leave the premises during their break without being subjected to disciplinary action.

50. Importantly, Defendant's employee handbook did not mandate either of those acts to warrant discipline.

51. Interestingly, when informing Plaintiff of his suspension, Ms. Hennesy also asked Plaintiff when he "had set up that appointment regarding [his] testosterone shots."

52. Plaintiff was confused by Ms. Hennesy's question, as it was not relevant to his suspension.

53. Ultimately, on or about December 2, 2025, Defendant unlawfully terminated Plaintiff from employment.

54. Notably, Plaintiff never received any write-ups or disciplinary action prior to his termination from employment.

55. Accordingly, it is believed, and therefore averred, that Plaintiff was subjected to differential treatment and a hostile work environment on the basis of his sex, gender identity, and/or transgender status, and was terminated from employment by Defendant in retaliation for his complaints in connection thereto, in violation of Title VII and the NJLAD.

56. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotions, benefits, earnings and earnings potential, potential benefits as well as other economic damages. Plaintiff has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to reputation and career.

**COUNT I**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII")**
**42 U.S.C. § 2000e, *et seq.***
**SEX/GENDER DISCRIMINATION, RETALIATION, AND HOSTILE WORK ENVIRONMENT**

57. Paragraphs 1 through 56 are hereby incorporated by reference as though the same were fully set forth at length herein.

58. At all times material hereto, Defendant employed at least fifteen (15) employees at its various locations.

59. Plaintiff is a transgender man and as such is a member of a class protected under Title VII from unlawful discrimination because of sex.

60. Defendant discriminated against Plaintiff by treating him worse than his cisgender coworkers because of his sex, in violation of Title VII.

61. Defendant took tangible employment action against Plaintiff in the form of termination from employment because of Plaintiff's sex, in violation of Title VII.

62. Defendant subjected Plaintiff to and/or otherwise permitted the existence of a hostile work environment because of his sex, in violation of Title VII.

63. Defendant undertook tangible employment action against Plaintiff, in the form of termination from employment, in retaliation for Plaintiff's good-faith complaint(s) of being subjected to a discriminatory and hostile work environment.

64. Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical well-being.

65. Because of Defendant's unlawful acts, Plaintiff suffered damages of, among other things, loss of past and future wages and compensation, mental and emotional damages, loss of reputation, personal humiliation, and loss of life's enjoyment.

66. As a result of Defendant's deliberate, unlawful, wanton, and malicious actions as set forth above, Plaintiff has suffered loss of employment, promotion benefits, earnings, and earnings potential.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgement in his favor and against Defendant, and grant him the maximum relief allowed by law, including but not limited to:

A. Back wages, front pay, and compensatory damages in an amount to be determined at trial;

B. Punitive damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C. Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

D. Pre-judgment interests in an appropriate amount; and

E. Such other further relief as is just and equitable under the circumstances.

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

**COUNT II**
**NEW JERSEY LAW AGAINST DISCRIMINATION ("NJLAD")**
**N.J.S.A. § 10:5-1, *et seq.***
**SEX/GENDER DISCRIMINATION, RETALIATION, AND HOSTILE WORK ENVIRONMENT**

67. Paragraphs 1 through 66 are hereby incorporated by reference as though the same were fully set forth at length herein.

68. Plaintiff is a transgender man and as such is a member of a class protected under the NJLAD from unlawful discrimination because of sex.

69. Defendant discriminated against Plaintiff by treating him worse than his cisgender coworkers because of his sex, in violation of the NJLAD.

70. Defendant took tangible employment action against Plaintiff in the form of termination from employment because of Plaintiff's sex, in violation of the NJLAD.

71. Defendant subjected Plaintiff to and/or otherwise permitted the existence of a hostile work environment because of his sex, in violation of the NJLAD.

72. Defendant undertook tangible employment action against Plaintiff, in the form of termination from employment, in retaliation for Plaintiff's good-faith complaint(s) of being subjected to a discriminatory and hostile work environment.

73. Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical well-being.

74. As a result of Defendant's deliberate, unlawful, willful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits as well as other economic damages, mental/emotional pain and suffering, mental/emotional distress, humiliation, and damage to reputation and career.

75. As a direct and proximate result of Defendant's illegal discrimination, Plaintiff has suffered and will continue to suffer harm, and is entitled to all legal and equitable remedies available under the NJLAD.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgement in his favor and against Defendant and grant the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, bonuses, and other lost earnings/benefits in an amount to be determined at trial;

B. Compensatory, exemplary, and/or punitive damages;

C. Pre-judgment interest in an appropriate amount; and

D. Such other and further relief as is just and equitable under the circumstances;

E. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable law.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By: *_/s/Mary Kramer_* ____________

Mary Kramer, Esquire
1628 John F. Kennedy Blvd., Suite 2000
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-0210
mkramer@phillyemploymentlawyer.com
*Attorney for Plaintiff*

Dated: September 22, 2026

## DEMAND TO PRESERVE EVIDENCE

Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to his potential claims and his claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.